# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION

JORDAN NABB

        Plaintiff,

   v.

JAMES SURANE
SUSAN SURANE
KIMBERLY THAXTON
BEN THALHEIMER
JOSEPH CATALDI
DOMINICK MICHAEL JOSEPH CATALDI
LISA CATALDI
DONNA WILLIAMS
TODD WEPRIN
SURANE LAW, PLLC

**Civil Action No.: 3:26-cv-560**

**COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Jordan Nabb ("Plaintiff" or "Nabb") files this Complaint against Defendants James Surane, Susan Surane, Kimberly Thaxton, Ben Thalheimer, Joseph Cataldi, Lisa Cataldi, Dominick Michael Joseph Cataldi, Donna Williams, Todd Weprin, and Surane Law, PLLC (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1. Does a grandfather know the names of his grandchildren? Is perjury acceptable?

2. This is an action for fraud, civil conspiracy, and for violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq. ("UDTPA").

3. This case started when Plaintiff called the police to report a crime committed by Defendants 5 and 6, who were arrested, and then sought revenge by any means possible including perjury, enlisting everyone around them into their scheme. The arrested individuals conspired with the other Defendants, including a non-existent law firm, to lie and deceive in any manner they felt necessary to exact this revenge on Plaintiff.

4.       Defendants 5 and 6 forged a deed in a parking lot. This was abetted by a notary friend of theirs who the North Carolina Secretary of State has since stripped of his notarial license and absent the two parties who supposedly signing witnesses. The fraud and dishonesty compounded from there. These defendants then engaged the non-existent law firm to further dilute title, even after being warned by Plaintiff of the fraud their clients were committing. Due to no response from Defendants or correction of the fraudulent deed, Plaintiff reported the criminal, fraudulent conduct to police and filed to partition the property. This resulted in the Defendant's 5 and 6 being arrested pursuant to a duly issued warrant. Angered, Defendants 5 and 6 who, with the other Defendants, concocted a revenge plan which consisted of highly coordinated deceptive misrepresentations, fabricated statements, false affidavits, fabricated evidence, adding up to a long series of fraudulent and unlawful conduct in order to extort $100,000 from Plaintiff.

## JURISDICTION AND VENUE

5.       This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different States.

6.       Plaintiff is a citizen of South Carolina, residing in York County.

7.       Defendants 1-7 are, upon information and belief, a citizens of North Carolina and reside or have their principal place of business in Mecklenburg County.

8.       Defendants 8-9, upon information and belief, are residents of Florida.

9.       Defendant "Surane Law, PLLC" was a professional limited liability company with its registered principal place of business in Mecklenburg County, but voluntarily filed articles of destruction in 2015. James Surane was the filer.

10.       Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in Mecklenburg County, North

Carolina, where Defendants reside or where all the acts and wrongful conduct occurred, and where Plaintiff suffered resulting injuries.

11. This Court has personal jurisdiction over Defendants in this District because Defendants are either residents of North Carolina, have their primary place of business substantial business in North Carolina, have transacted substantial business throughout the United States, including in this District, and have purposefully and directly targeted persons and property in North Carolina, with fraudulent and misleading statements and conduct that they intended to and knew would cause significant economic injury in this State.

## PARTIES

### I. Plaintiff Nabb

12. Plaintiff Jordan Nabb is a natural person and permanent resident of Rock Hill, South Carolina.

### II. Defendants

13. Defendant 1, James Surane is a natural person who, at all relevant times, controlled, directed, and dominated the corporate Defendant and personally participated in and directed the wrongful conduct alleged herein. On information and belief, Defendant 1 permanently resides in and is a citizen of North Carolina.

14. Defendant 2, Susan Surane is a natural person who, at all relevant times, was the paralegal for the corporate Defendant and personally participated in and directed the wrongful conduct alleged herein. On information and belief, Defendant 2 permanently resides in and is a citizen of North Carolina.

15. Defendant 3, Kimberly Thaxton, is a natural person who, at all relevant times, was an agent of the corporate Defendant and personally participated in and directed the wrongful conduct alleged herein. On information and belief, Defendant 3 permanently resides in and is a

citizen of North Carolina.

16. Defendant 4, Ben Thalheimer, is a natural person who at all relevant times, was an agent of the corporate Defendant and personally participated in and directed the wrongful conduct alleged herein. On information and belief, Defendant 4 permanently resides in and is a citizen of North Carolina.

17. Defendant 5, Joseph Cataldi, is a natural person who, at all relevant times, was an agent of the corporate Defendant and personally participated in and directed the wrongful conduct alleged herein. On information and belief, Defendant 5 permanently resides in and is a citizen of North Carolina.

18. Defendant 6, Dominick Michael Joseph Cataldi, is a natural person who, at all relevant times, personally participated in and directed the wrongful conduct alleged herein. Defendant 6 permanently resides in and is a citizen of North Carolina.

19. Defendant 7, Lisa Cataldi, is a natural person who, at all relevant times, personally participated in and directed the wrongful conduct alleged herein. Defendant 7 permanently resides in and is a citizen of North Carolina.

20. Defendant 8, Donna Williams, is a natural person who, at all relevant times, personally participated in, abetted, and directed the wrongful conduct alleged herein. Defendant 8 permanently resides in and is a citizen of North Carolina.

21. Defendant 9, Todd Weprin, is a natural person who, at all relevant times, personally participated in, abetted, and directed the wrongful conduct alleged herein. Upon information and belief, Defendant 9 permanently resides in and is a citizen of Florida

22. Defendant 10 was a domestic corporation of North Carolina with its primary place of business in Mecklenburg County, North Carolina, which was voluntarily dissolved in 2015, and

which continues to unlawfully operate in a for-profit manner to this day as managed or directed by Defendants 1-4.

**FACTUAL ALLEGATIONS**

**I.** **The Beginning: Plaintiff's Appointment as Guardian of the Estate and Discovery of Defendants' Deed Fraud**

23. Plaintiff, in the role of Guardian of the estate to a minor client, and set about collecting the minor's property, which included bank accounts, stock certificates, and a house at 9704 Bailey Road in Mecklenburg County that the minor's grandfather bought and gifted the minor a fifty-percent interest in 2014. During the title search, Plaintiff discovered a suspicious deed with obviously fake signatures that was supposedly notarized in September 2020, and then more suspiciously recorded six months later after the grandfather had died. This obviously fake deed was used by Defendants 5 and 6 to remove the minor's name and strip his interest by replacing it with Defendant 5's name. As a result, Plaintiff contacted the original grantors and asked if they had signed a deed in September 2020 and they denied any knowledge of signing any deed except the original deed in 2014.

24. Later, in an unrelated case to this one, the notary, represented by Defendants 1, 2, 3, 4, and 9, attended a deposition at Plaintiff's office in Mint Hill (this location is significant later) where the notary was deposed and admitted that he notarized the forged deed in the Metro Diner Parking lot in Huntersville, North Carolina where only he and Defendants 5 and 6 were present. The other three signatories were not present, yet somehow their names which are obviously not their legitimate signatures, appear on the recorded deed. This is impossible absent fraud, perjury, and criminal conduct.

25. Defendants to this day refuse to answer the question of who signed the other three names on the deed or offer any explanation of how they got there. yet somehow their names and

signatures, which are obviously not legitimate.

## II.    Police Report and Defendants Arrest

26.    Because there was no rational explanation to explain the forgery from Defendants, Plaintiff filed a police report and provided the notary's deposition, the forged deed, and the original deed, to the police officer as evidence that Defendants 5 and 6 had had committed a crime and notified Defendants that Plaintiff had filed a police report and they were under investigation.

27.    After speaking with Defendant 9, who was the long-time attorney and trustee for the grandfather and prepared many deeds for him, Defendant 9 indicated that selling the property would be amenable to the estate and, upon information and belief, this attorney had no knowledge of the forged deed prior to Plaintiff bringing it to his attention. Defendant 9 then conspired to falsify facts and statements which led to Plaintiff filing a partition action in Mecklenburg County.

28.    Despite having the knowledge that a police report had been filed and a partition action had been filed, Defendants made no effort to contact police or have the deed rescinded. As a result, a warrant was issued for the arrest of Defendants 5 and 6 and they were in fact arrested.

29.    Defendants were unhappy that Defendants 5 and 6 were arrested and although the Mecklenburg District attorney declined to prosecute despite the overwhelming evidence, Defendants began scheming for revenge.

## III.    The Revenge: Defendant's Fraud and Perjury

30.    On July 14, 2023, Defendants filed a verified complaint against Plaintiff and his former minor ward in Mecklenburg Superior Court that was completely fabricated. However, despite having been to Plaintiff's office and having knowledge that Plaintiff lived in South

Carolina, Defendants decided to serve a random person with a UPS envelope and file an affidavit of service even admitting later on the record that "We had no idea who we'd served" or words to that effect. Defendants to this day have failed to correct this error. As a result of this perjury, Defendants obtained entry of default.

31. Plaintiff was aware of the lawsuit and was simply waiting to be served before making an appearance, but was never served.

32. After perjuring themselves in the affidavit of service, Defendants began sending notices, not to Plaintiff's office or his residence, but to a former residence occupied by tenants belonging to Plaintiff's parents in Matthews, North Carolina. The Defendants went to extraordinary lengths to avoid any notifications being sent to Plaintiff.

33. It is critical to note that actual knowledge of a lawsuit does not constitute a general appearance under North Carolina law. Furthermore, it is critical to point out that making a limited appearance on behalf of a client does not constitute a general personal appearance in a case and there is no case law to say otherwise. Defendants knew this but chose to misrepresent this to the judge in order to save their case and continue their fraud.

34. Defendants deposed the minor guardian where Plaintiff represented him and state on the record that Plaintiff was making a limited appearance for solely representing the minor guardian. Plaintiff had not yet been served and was unaware of the perjurious and fraudulent affidavit of service.

35. Defendants scheduled an in person hearing for February 13, 2024 at 10:00 for default judgment. Then, instead of conducting the hearing at 10:00am, Defendants started the hearing at 9:30am and finished at 10:00am in order to prevent Plaintiff from appearing. During the

hearing, Defendants made multiple false statements, including (a) Plaintiff had attended a deposition in the case and implied to the judge that it was Plaintiff's deposition; (b) that Plaintiff had been served; (c) that Plaintiff had not provided police with any evidence to support the fact that the Defendants had forged a deed; (d) that Defendant 8 was an attorney and provided legal advice to grandfather. Defendant 8 is not an attorney.

## III.     Additional Specifics and Consequences.

36.     Defendants have spent considerable resources to exact revenge on Plaintiff. They have colluded together to falsify statements, evidence, testimony, and committed perjury in or to cause damages to Plaintiff by harassing lawsuits, falsely obtaining entry of default, and costing Plaintiff in excess of over $200,000 in damages and legal fees. In order to do so, Defendants colluded together to invent the most implausible justification for deed fraud and made specific statements, including but no limited to the following, none of which are true or factual, and which they knew or should have known were not true and factual in order to injure Plaintiff:

(a)     Stating that Plaintiff initiated criminal proceedings without probable cause against Defendants 4 and 5; not only is this a legal impossibility, it is factually inaccurate. Defendants never asked law enforcement what evidence was provided, yet claimed Plaintiff had no "probable cause". Plaintiff was the Guardian of the Estate and provided the notary's deposition and other evidence of the deed fraud to law enforcement. Defendant's either knew this or ignored it. Further, if someone is committing deed fraud, it is completely reasonable to report that to law enforcement.

(b)     Stating that Defendant 5 would be impacted by having two felony arrests in order to maximize damages. This was a false statement made under oath and reviewed by the Defendants. Defendants had expunged their records at the time of the statement and Defendants

had actual knowledge of this fact but stated it under oath in order to damage Plaintiff.

(c)     Defendant 8 stated under penalty of perjury that she that she represented and provided legal advice to grandfather; this is a perjurious statement as Defendant 8 is not a licensed attorney and knew this to be false at the time of the statement. This statement was used by Defendants to damage Plaintiff.

(d)     Defendant 9 stated that he represented grandfather for decades, yet had no knowledge of the forged deed, did not prepare it, and made false statements that the forged deed was signed by grandfather when in fact, it was not.  Defendants knew this was false based on the notary's admission prior, yet presented it as fabricated evidence in order to damage Plaintiff.

(e)     On October 27, 2023 Defendant 1 stated, under penalty of perjury, that Plaintiff had been served with a lawsuit via UPS. On June 5, 2024, Defendant 1 stated "we had no idea who we'd served"  and despite being familiar with Plaintiff's unique signature, Defendants admitted the statement was false and failed to correct it.

(f)     On December 19, 2023, Defendants filed a Motion for Entry of Default which stated that Plaintiff had been served, despite this being completely fabricated as admitted on June 5, 2024. Additionally, Defendants mailed this motion to Plaintiffs former residence to prevent his receipt of the motion.

(g)     On February 9, 2024, Defendant 7, who at all times was fully aware of Defendants' conspiracy to commit deed fraud, filed a false and defamatory statement stating that Plaintiff made false accusations to the police department in order to harass Defendants. Defendants knew or should have known this was false and used it to damage Plaintiff.

(h)     Defendants scheduled hearing 10:00am on February 13, 2024 but started the

hearing at 09:30 am and finished at 10:00 am.

37.     The level of fraud and dishonestly in this case is truly staggering. Defendants 5 and 6 got caught forging a deed, and since then all the Defendants have circled the wagons, so to speak, to exact revenge on Plaintiff by operating a non-existent law firm, filing frivolous lawsuits, making perjurious statements, admitting to perjury, and all to profit from their dishonesty at Plaintiff's expense.

## IV.     <u>Plaintiff's Damages</u>

38.     Plaintiff has suffered direct monetary losses amounting to over $75,000 in lost wages and $126,000 in monetary damages.

39.     Plaintiff has also incurred out-of-pocket expenses, lost business opportunities, emotional distress, and attorneys' fees necessary to investigate and prosecute this action.

40.     Defendants' conduct was willful, malicious, and in bad faith, warranting treble and punitive damages.

**CLAIMS FOR RELIEF**

**COUNT ONE**

**I.      Fraud (Common Law)**

41.      Plaintiff realleges Paragraphs 1–40 as if fully set forth herein.

42.      Defendants, individually and collectively, made false representations of material fact, including but not limited to:

(a)      That Surane Law, PLLC existed as a law firm;

(b)      Offering evidence and statements known to be false to the Mecklenburg County Register of Deeds, law enforcement, and the Courts;

(c)      Deliberately violating the rules of civil procedure and professional responsibility in order to mislead courts and damage Plaintiff;

43.      At the time the representations were made, Defendants knew they were false or made them with reckless disregard for the truth.

44.      Defendants made the misrepresentations to third parties and to the intent that Plaintiff would rely on them and  damage Plaintiff.

45.     Third parties reasonably and justifiably relied on the misrepresentations.

46.     Plaintiff has been injured and damaged in an amount to be proven at trial, but not less than **$200,000**, as a direct and proximate result of Defendants' fraud.

47.     Because Defendants acted willfully, wantonly, and with malice, Plaintiff is entitled to punitive damages.

## COUNT TWO

### I.      Civil Conspiracy

48.     Plaintiff realleges Paragraphs 1–47 as if fully set forth herein.

49.     Defendants colluded to harass Plaintiff, falsify evidence, knowingly file misleading and untrue statements, and concoct a detailed scheme to use unlawful means to exact revenge and damage Plaintiff.

50.     As a result of Defendants' conspiracy, Defendants obtained a default judgment that never should have occurred, and Plaintiff was damaged in an amount in excess of $126,000.

## COUNT THREE

### II.     Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1 et seq.)

51.     Plaintiff realleges Paragraphs 1–50 as if fully set forth herein.

52.     Defendants engaged in commerce by renting out the property at 9704 Bailey Rd, earning fees, collecting judgments, and accepting payments for services at Plaintiff's expense.

53.     Defendants' conduct—including false advertising, fraudulent inducement, forgery mail fraud, and threats against Plaintiff—constitutes unfair and deceptive acts or practices within the meaning of N.C. Gen. Stat. § 75-1.1.

54.     The acts were in or affecting commerce and caused Plaintiff ascertainable losses in excess of $200,000.

55.     Defendants' conduct was willful and intentional, entitling Plaintiff to treble

damages under N.C. Gen. Stat. § 75-16, as well as reasonable attorneys' fees under § 75-16.1.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally, and award:

A.  Compensatory damages in an amount to be determined at trial, but not less than **$200,000**;

B.  Treble damages pursuant to N.C. Gen. Stat. § 75-16;

C.  Punitive damages for Defendants' willful and malicious fraud;

D.  Pre- and post-judgment interest as allowed by law;

E.  Reasonable attorneys' fees and costs under N.C. Gen. Stat. § 75-16.1 and as otherwise permitted; and

F.  Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Dated: July 13, 2026

Respectfully submitted,

*/s/ Jordan Nabb*
Jordan Nabb
450 W Rambo Rd
Rock Hill, SC
Telephone: (704) 443-8430
Facsimile: (704) 443-8430
Email: jpnabb@gmail.com
*Plaintiff*